Good morning. Please be seated. Your Honor's first case in the morning call to 13 oh four 39 William Fox versus Wooddale Firefighters Pension Board at all. On behalf of the epilogue, this Heidi Parker on behalf of the athlete, Mr. Kerry J. Collins. Morning Council. Let me step forward. Normally, Council, we have a third justice. However, our third justice is unable to be here today. However, he will certainly listen to the oral arguments that are recorded and participate in the decision. Okay, thank you. May it please the court. Heidi Parker, counsel for the plaintiff in this case, William Fox. The pension board's decision presents two main issues for this court to consider. And those are the issues of credibility and the medical evidence. As an initial matter, the Illinois Supreme Court ruled in Cazucas that credibility decisions are reviewable and board decisions may be reversed if investigated. The evidence Lambert, a case decided in this district last year, also said that credibility determinations that it that reports decision is, uh, should be reversed if the entire decision is implausible based on improper credibility determinations. Now, counsel, a reviewing court, however, is not supposed to supposed to reweigh the evidence or resolve conflicts in the evidence. And as long as the board's decision was supported by some evidence, and in this case, Dr Lanoff's testimony that Mr Fox was not permanently disabled, aren't we required to affirm two points on that? Lambert actually says that if even if there is some evidence, if the if the manifest way that the evidence is against the decision, it should be reversed. Additionally, Dr Lanoff made a blanket statement that Mr Fox was not disabled. However, that was the board's decision to make. Not Dr Lanoff's decision. Dr Lanoff was only to determine the fitness of Mr Fox to return to duty. And when he reviewed uh, Mr Fox's condition, he stated that Mr Fox was permanently disabled. He said he could not perform his duties as a firefighter. Excuse me. Didn't he use the words temporarily disabled? Did he use the word permanently disabled in his written opinion? He said it was permanent. Dr Lanoff. Yes. His reasoning behind saying that Mr Fox was not disabled was based on his opinion that at some point in the future, Mr Fox might recover that he can work through his pain, which he had. Mr Fox had been doing for 11 years working through his pain or that Mr Fox should have surgery and then he might be able to go back to work. So Dr Lanoff's opinion that Mr Fox was not disabled was was not. He did not use the standard used by that the pension board is supposed to use in determining whether a firefighter is disabled or not. He used the words he's not disabled. But under the pension law, he's not disabled. Now, if Mr Fox was able to work two shifts on May 11th and May 12th in 2011, one of which was a voluntary overtime shift. How can we conclude that he was permanently disabled from performing his job duties, which is the test? Sure. Mr Fox had been injured initially in 2000. He had been working through his disability for 11 years, continually being injured and injured and injured about seven times in 2009. His injuries became more and more frequent. 2009. He had injury 2010. He had to 2011. He had one. His condition had been getting worse and worse, but he had continued to work. And so the fact that he worked a couple two or three shifts after his last injury didn't mean that he was completely unable to work. It meant that going forward, he was disabled from continuing to work at the level that he was required to work as a firefighter. His injuries have been more and more frequent. The time period between his worked a couple shifts. The occupational health doctor for the district. This is the district's own doctor said, Come back, go on vacation, come back and see me. Maybe over vacation, you'll recover and you'll be able to go back to work. Come back and see me in a week. He goes back and sees this doctor. She says, that's it. You're done. You haven't recovered from your last injury. You're done. And at that point is when according to the district's own doctor, Mr Fox was disabled. However, he was able to that summer ride in the rag bride in I believe it was Iowa. Was he not over 300 miles? That's correct. That's correct. That's correct. So how is that not inconsistent with his claimed inability to perform his job duties as a firefighter paramedic? Because according to Bowen case decided in the fifth district post injury activity does not cause a disability finding. Those two things are not inconsistent. Well, he wrote it another. I mean, he wrote it prior to wrote it another time in 2009. Right. So that wasn't after he was injured in May. It was during the in 2009. He wrote the complete right tour. So how is that not inconsistent with his ability to perform his duties? Because the level of exertion required under Bowen, the level of exertion required to engage in recreational activities is not the same as the level of exertion required to perform the duties of a firefighter. That's a very heavy duty job. Was there evidence of what his duties actually were? Yes, there is. There was testimony. Uh, he was required to crawl, squat, climb ladders, carry ladders, carry people weighing who testified to that. Mr Fox testified about some of his duties on the first night of his hearing. There was also a document put into evidence that lists out the duties of a firefighter and that spells out exactly what firefighters do and their requirement. And did he testify as to what duties he could not perform because of his back pain? Which of those duties he couldn't perform? He he was a paramedic. And so his primary duties were to lift stretchers, provide care to patients and perform training. You know, the training exercises went beyond paramedic duties. As far as lifting patients, he was unable to lift stretchers. Other firefighters did that for him. He would provide care. And there were certain instances where he would be in the back of an ambulance and be moved around, be knocked over. And so he was having difficulty every time he was twist. He had difficulty twisting every time he twisted or was knocked over that aggravated his condition. So, yes, he did testify about his inability to perform. And furthermore, Mr Fox didn't want to stop working. It was the district's own doctor who said he can't work anymore. He never came up and said, I can't do this anymore. The doctor said that. And when he saw his own personal treating physician, that doctor also said, you can't do this anymore. The three board doctor significantly. The three board doctors all said he cannot perform the duties of a firefighter. The medical evidence, the manifest way of the medical evidence supports that Mr Fox is disabled. There was absolutely no evidence, medical evidence to say that he was not disabled. Everything supports that he was. Didn't Dr Lanoff testify that if he'd had surgery, he would have been able to fully recover? No, he did not say that. He did not say he would be able to fully recover. He says his testimony. Dr Lanoff said that there's always a possibility that he won't recover, that he'll go back to work and keep having the same problems that he'll go back to work. And you really think a doctor was ever going to give 100% guarantee? I'm sorry. I mean, would you expect a physician to say if you have the surgery, I guarantee 100% you're gonna have full recovery? Absolutely not. That's don't we put that all into somewhat of context? So I believe he said that, this doctor thought that the surgery would significantly help your client. Yes, but a board is not allowed to make disability findings based on whether the applicants treatment will make him better. That's not the law of the state. The law of the state is to make a determination at the time of application whether that person is disabled. And after a year, that person sees another doctor or the same doctors or his doctor to determine whether he's still disabled and still entitled to benefits. So there's a review on a yearly basis as to whether the person is disabled or not. And at the point that he was reviewed by these three medical doctors, the board's own doctors, they all said he could not perform the duties of a firefighter. Dr Lanoff said he was a risk to the public, to his co workers and to himself. Mhm. I want to address the credibility issue. You had started with that, but I think I kind of got you off on a different tangent, please. Yes, the board determined that Mr Fox was not credible based on unsupport unsupported findings. The board relied on Mr Fox's prior discipline. However, Mr Fox's prior discipline had been overturned by a neutral fact finder. It had absolutely no, uh, it was, it was not related at all to Mr Fox's disability and therefore should not have been considered. Second, the board relied on their finding of fact that the fire chief had said that Mr Fox had lied to him. However, there's nothing in the evidence, nothing in the record to support that the chief said this about Mr Fox or that Mr Fox had lied to him. Did that come in through a question of an attorney of the board's attorney? That's correct. That's how it came in. And is that evidence? No, it's not. The chief did not testify. There was no documentary evidence to show that the chief said this or that Mr Fox in fact lied. The next thing is that the board stated that Mr Fox's testimony was improbable and inconsistent. They did not specify in their decision what about Mr Fox's testimony was improbable or inconsistent. However, I'm not implying that they needed to do that. But if you look at the record, if you look at the transcripts, there's nothing in the transcripts that shows that Mr Fox's testimony was improbable or inconsistent. He always testified consistently. He always completely answered the board's questions. Finally, the board decided without any evidence that Mr Fox must be lying about his injury because he was able to perform. He was able to engage in post injury activity. We already touched on this a little bit and I just like to reassert that the cases in this state under Boland Kazookas, Rosette decided in the third district and Lambert all say that post injury activity does not equal the level of exertion required of a firefighter. These are two. Is that a factual determination? Yes. Yes, it was. And like I said, the facts in those cases are very similar to the facts in Mr Fox's case. Mr Fox had never been restricted from engaging in everyday activities and recreation. The in in Rosette, the applicant went snorkeling in Lambert. The applicant was seen lifting things in his yard in Kazookas. In Boland, the applicant had gone white water rafting and had gone hunting and the board said that based on the evidence, I'm sorry, the court said that based on the evidence, those activities did not equal the level of exertion required of a firefighter. Thank you. The your time is up now, but you will have an opportunity for rebuttal. Thank you. Thank you very much. It leaves the court. Karen Collins on behalf of the Wooddale Firefighters Pension Fund. Your honor, I'm gonna try to be very brief. Essentially, take as much time as you're allotted. Counsel. Okay, this is a case, certainly your honor, which is applicable to the standards employed by the Administrative Review Act. And the court has already stated the fact that it is really something where basically the findings and the decision of the pension board should not be set aside as long as there is a basis for it. The court pointed out very well that the board relied extensively on Dr Lanoff's testimony. Why? Counsel, did the board give Dr Lanoff's opinion more weight than Dr Shapiro's and Dr Yen's reports? Your honor, because of the fact that we not only took his report, his deposition was also taken so that all the questions and information was able to derive in person. In fact, unusually, your honor, two members of the pension board actually came to the deposition. Why not three? Because of the fact that that would constitute violation of the Open Meetings Act. So they did in fact attend that. In fact, they even asked a couple simple questions. Counsel has said, Dr. Lanoff did not say that he was disabled. On page 9, the last paragraph, this man is not a candidate for permanent disability by any stretch of the imagination. But he did say, did he not, that he was unable to perform the full duties of his position as a firefighter, paramedic, with the subjective complaints that he said. And throughout this entire hearing, throughout all these doctors' reports, these are all subjective complaints of Mr. Fox. However, they were corroborated by their medical evidence in the MRIs, were they not? The fact is that they discovered, yes, there are ruptured discs, but we've got to understand, your honor, a ruptured disc itself is not disabling. A ruptured disc is actually only disabling when it actually interferes or puts pressure on a nerve. Right. And then what Mr. Fox related was that he did have that pain. A subjective complaint, your honor. Well, how else? An objective finding. One second, please. How else would one discern that somebody is in pain other than a person relating that they're in pain from pressure on a nerve? How else? I mean, I understand there's another test, which I believe he had, that talks about, um, a decrease in ability of function. And he had some decrease also. But leave that aside. How else would we know that? Your Honor, we can accept subjective complaints. In fact, the physicians, many of the physicians here did, in fact, accept those. The fact is here, your honor, that Dr Fox, because of the fact that in his review of the objective tests, they are not consistent with the type of pain that Mr. Fox was complaining of. And that was the conclusion that the board reached. The fact is that that consistent with all of Mr. Fox's inconsistent activities. And your honor, we're not just talking about the rag dry. Your honor, he told his own doctor in June he couldn't ride a bike. He couldn't ride a bike a mile, two 30 days later. This was on June 13th. He told Dr Tashimi that he couldn't ride a bike. Yet, your honor, barely a month later, he rode across Iowa in the right priorities. Counsel has told us we're not the board was not to consider. So how would you respond to her summary of the case law in Illinois with regard to their honor? Those could be easily distinguished. Boland is an exception. Boland is one. I believe we're the honor of the actually observed this. And the fact is, this was consistent with the activities he did before, and it's not one of the things that he had complained he could not do. In this case, Mr Fox said, I cannot ride a bicycle. He told the doctors I cannot ride a bicycle. Yet he is riding a bicycle. And furthermore, he could not ride a bicycle. He told Dr Tashimi this, your honor. And when was that? That was on June 13th and an examination on June 13th, June 13th, 2011. Yes, your honor. So at that particular time, he could not ride a bicycle because that's what he told recently been injured. That's what he told the doctor. And based upon that, the doctor came to those conclusions. Your honor, they accepted it. In fact, Dr Lam doesn't say that he is necessarily a liar. He says, in fact, Dr Shapiro said he took everything was very sympathetic towards him and said, Well, you know, I can understand why Dr Shapiro, a good friend of mine, reached that conclusion. He's a nice fellow. He comes across very well, but he's just not disabled. These don't add up. The board took that along with other other information and the actions of Mr Fox. Mr Fox immediately after this alleged injury went on a six hour plane flight to Aruba. But we don't know how much time he was seated, how much time he walked around. I mean, what is there? Excuse me, counsel. What is there inconsistent about going to an airport and sitting on a plane with having back pain and being able to perform? Excuse me. I'm sorry. Interrupted you. But on then being able to perform the duties of a paramedic firefighter, your honor, he says he can't sit for more than 1.5 hour. If you go on an airplane flight, there's no guarantee that you're going to be able to get up out of your seat and walk around the plane. If there's turbulence, you have to have sweet. Really all speculation. Nobody testified as to what happened on that flight or how long he was seated. And it wasn't a six hours to flew from O'Hare to Miami at a layover and then Miami to wherever it was. Aruba. Oh, you're correct, Your Honor. I stand correct. But how do we, you know, how? How do we speculate? It could have been the smoothest flight in the world, and he was walking up and down the aisle the whole time. That's possible. But the board took that into consideration. Would a person who has suffered this traumatic injury suddenly determined to go on a lengthy flight? The board had to question that. This is evidence. This is part of the consideration. And this is not the sole basis for this, Your Honor. More importantly, is the inconsistency with regard to the bicycle, the bicycle race. I mean, Your Honor, I can't ride across the state of Iowa. A lot of people can't. Well, he testified that he didn't ride the way, in fact, that he had difficulty riding and he actually did. He drove part of the way. That was part of what the record revealed. That's that's what he said. Well, that was his testimony. That's his testimony. And the board does not believe that he's completely forthcoming and honest. We also asked what days did he ride? And on each of these days, we were able to take that section of the trip where you had to get from point A to point B. And you can't, like, stop halfway because that's where the group meets. And as you total it up, it's over 400 miles. He rode 60 miles on one day, and he did, in fact, admit that in the record how many miles he rode. This is not five or 10 miles. This is this is extension of bicycle ride. I'm not a bicycle rider myself. So what's their testimony about what is similar between bike riding and lifting patients, lifting ladders, lifting bags of salt and the work that he did as a firefighter? Well, Your into the vehicle, but we don't know that there was no testimony about that. We don't know who lifted the bicycle. We know he rode that he testified. I believe he rode the bicycle. I don't believe I'd have to check that there was testimony about who lifted the bicycle. Well, Your Honor, then I'm remiss because we actually get on his. He is a victim of his own Facebook page. Most of this information is all on in the Internet, and that's part of our record. You're on the Internet. One thing that I wish I put in there, but we didn't have sufficient background for it is a picture of him lifting a bicycle over his head at the Mississippi River. But that's not in evidence at this point. And so, nonetheless, Your Honor, it is the cumulative effect of all these inconsistencies and Dr Landau's report that the board relied upon. And the board does not have to get a conclusive evidence. In fact, Your Honor, this is a perjury trial. We're not trying to prove he's lying and prosecute him. We are merely taking his testimony of the face value that the board believes is acceptable. Dr Randolph says, you know, he has complaints. He probably has pain, so he should make one of two decisions. He should either work through the pain, as a lot of other firefighters do, or alternatively have surgery. He's inconsistent in that if he has the pain that he complains of, that he should, in fact, have surgery on his back to alleviate that pain. Well, as Justice Jorgensen said earlier, I mean, what guarantee is there, counsel, that surgery would have corrected the pain? He did, since 2000, I guess a little later than that, start with epidurals and tried epidurals and physical therapy to alleviate the pain. But, was there any testimony that surgery would have alleviated the pain? Dr. Randolph says in his report that there is a good probability and a high probability that surgery will resolve the pain based upon his observations. And that's in his report. The fact is, Judge Jorgensen is correct. No doctor will ever give you a 100% guarantee. And the fact is, you can't. There could be an exception. But if you're suffering that great a pain, as Mr. Fox tried to testify that he has, and in his head, perhaps he does have the pain. A thorough reading of Dr. Randolph's report says there are a lot of reasons why people make this type of claim. Some of them are motivated by economic reasons. Some are done because they're not happy with their position. Some people make those allegations because of the fact that they have an unsatisfactory home life. In this case, certainly, Mr. Fox has had a bad experience with his employment. He had to be returned to the job because of arbitration. The fact is, he may be unhappy with the fact that he has had to go through that, might be paranoid that he's going to be fired again. Well, that's all speculation, counsel. Speculation. But the fact is, that is a possibility that Dr. Randolph took into consideration. Pardon? Dr. Randolph took that into consideration. He was aware of the fact that he had, in fact, been disciplined before. He called it the advantages of playing the sick role, I think. Yes, Your Honor. Is that what you're pointing to? Yes, Your Honor. That's our position. So if that was the doctor's conclusion, then your position is that those things that he considered to arrive at that conclusion would be considered part of the record. Yes, Your Honor. And those were all things that the board relied upon. The board relied upon the testimony of Dr. Randolph. And not only that, with Dr. Randolph, unlike Dr. Yen or Dr. Shapiro, counsel got to cross-examine him in asking questions. And at the conclusion of it, Dr. Randolph did not change his opinion. He did, at that time, feel he was not disabled. The board believed Dr. Randolph was probably correct. He did say he was temporarily disabled. Yes, Your Honor. He was temporarily disabled because of the fact that he had the subjective complaints. And you can, in fact, they could put him on light duty. And there was nothing here in the evidence that said they would put him on light duty on a temporary basis. There are no permanent light duty positions available in Wooddale, but they do put people in a clerical position until such time as they can return them to unrestricted firefighter duties. And the fact is that the department was ready to do that. And there's no, there's nothing here that says it's going to be permanent. In fact, if we remember here on page nine, what Dr. Randolph says, he is not a candidate for disability. He's not disabled. He has problems, but he's not disabled. But the other two doctors did indicate he was. The other two doctors did, in fact, say that. But the board was able to, the board looked at it and looked at it from the standpoint after the testimony of Dr. Randolph, how they could come to that conclusion. And that's because of the subjective complaints of Mr. Fox, which may have been motivated by any number of different factors. But again, we said those subjective complaints correlated with objective findings. Correct, counsel? That's not what the board found. The board did not find them. I believe it was Dr. Randolph's testimony. The board followed Dr. Randolph's analysis. Not Dr. Yens and not Dr. Shapiro's, because Dr. Randolph was able to elaborate and explain why those subjective complaints are not completely consistent with the objective findings. I guess I read it differently. His testimony. Yes, your honor. And forgive me if I'm confusing the facts, but your honor, it doesn't really matter. The fact is, Dr. Randolph's opinion is he's not disabled. The board relied upon that. And the board also found, and it's within the purview of the board, to determine the credibility of the Whips. And they did, in fact, find the credibility of Mr. Fox to be lacking. So your position then is the board can and does evaluate the testimony of finds one expert more credible than the other, or that his or her opinions are, in the board's opinion, better founded. Yes, your honor. And that's your bottom line. That would be, that would be it. Yes, your honor. Okay. Thank you. Thank you, counsel. Miss Parker. Mhm. Yes, I'd like to address some of the main points made by counsel. First is the bike issue. Mr Fox had a history of being physically active. He was engaged in sports all his life. He had been an avid bike rider. Riding the distance that he rode was not extreme for him. He was fit to be able to do that. He was ordered to go to physical therapy and engage in as much activity as he was able to tolerate. And when he went on the bike ride in July, between June and July, he had received epidurals, which had helped his pain. He had been taking pain medication throughout the bike ride prior to and throughout the bike ride, which helped him be able to ride and the pain throughout the past 11 years comes and goes. The pain comes and goes. And the issue is that in his condition with the herniations, with the symptoms of tingling and numbness in his leg and foot, he was a risk. He was a danger to the public. Although he could control his pain and be able to engage in activity, he could not serve the public as a firefighter safely. And that's the bottom line. Dr the board's reliance on Dr Landoff to say that Mr Fox was not disabled is against the manifest weight of even Dr Landoffs testimony. Dr Landoff said that his subjective complaints were consistent with the herniations. He said in his testimony, you see a herniation. It's consistent with the pain he's having in this location. It's consistent with the numbness and the tingling that he's experiencing. He said that and to deny that Dr Landoff said that is just against the manifest way of the evidence. It's as clear as that there were M. R. I. Reports. There was a nerve conduction test performed. Those are objective. Those showed impairment. Doctor's opinions are objective. Evidence has found Kazuka's his treating physician, the district's own physician. Their findings are objective evidence. Pain complaints on their own without any objective evidence. Well, without any tests to show that there's a problem, pain complaints on their own, according to Kazuka's are objective evidence. But here we had more than what Kazuka's had. We had M. R. I. Findings. We had a nerve conduction test that showed impairment. Dr Landoff also said that Mr Fox was straightforward in his testimony that he did not come in his reports to Dr Landoff that he did not come across as exaggerating his pain that he did not come across as someone having psychological issues. Dr Landoff said this does not look like a guy who's making this up. The board's twisting of Dr Landoff's testimony is against the manifest way of the evidence. The board relied on certain statements that Dr Landoff said and ignored all these others. Isn't that their function, though? It's their function to weigh all of the evidence, not to cherry pick this and that to come up with the finding that they want not to ignore all the medical evidence to come up with what they want. That's what they did. And the courts of this state have said that is not allowed and that boards decisions will be that a board cannot rely on only one doctor's testimony. They specifically said that I think the point is they have to consider all the testimony, but ultimately they can decide who they find to be the most credible based on the totality of the evidence. Yes. I mean, obviously, if you have two physicians, one says it's a one says it's be the fact finder must pick one option or the other. And my belief is that the case law requires them to consider all of the evidence. But ultimately, they're going to say I weigh this heavier than this. Yes, that's correct. But here we have five physicians who said he cannot perform the duties of a firefighter. Then we have one of those five who says, Oh, but he's not disabled. He said two different things. He contradicted himself just like the doctor did in bowling. And in bowling, that board's decision was overturned under similar circumstances. Thank you very much. Thank you. At this time, the court will take the matter under advisement and render a decision in due course. We stand in brief recess until the next case.